1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT TACOMA

10   STEVEN ROBERT ANGELONIS,

11                    Plaintiff,                    CASE NO. 14-cv-05863 JRC

12         v.                                       ORDER ON PLAINTIFF'S
                                                    COMPLAINT
13   CAROLYN W. COLVIN, Acting
14   Commissioner of the Social Security
     Administration,
15
                      Defendant.
16

17         This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 5; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 6). This matter has been fully briefed (*see* Dkt. 14, 21, 22).

21         After considering and reviewing the record, the Court concludes that the ALJ

22   erred in failing to include in her residual functional capacity ("RFC") finding all of the

23   limitations assessed by Dr. John M. Haroian, Ph.D. Because the RFC should have

24

included additional limitations, and because these additional limitations may have affected the ultimate disability determination, the error is not harmless.

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

<u>BACKGROUND</u>

Plaintiff, STEVEN ROBERT ANGELONIS, was born in 1992 and was 19 years old on the amended alleged date of disability onset of April, 11, 2012 (*see* AR. 12, 151-56). Plaintiff graduated from high school (AR. 34). He has no work history (*id.*).

According to the ALJ, plaintiff has at least the severe impairments of "borderline intellectual functioning, oppositional defiant disorder, anxiety disorder not otherwise specified (NOS), cannabis related disorder NOS, and status post left knee repair (20 CFR 416.920(c))" (AR. 14).

At the time of the hearing, plaintiff was living with his mom, brother, and fiancée (AR. 33).

<u>PROCEDURAL HISTORY</u>

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* AR. 65-75, 77-88). Plaintiff's requested hearing was held before Administrative Law Judge Stephanie Martz ("the ALJ") on March 19, 2013 (*see* AR. 27-63). On April 17, 2013, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* AR. 9-26).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ err in assessing the medical evidence in the record; (2) Did the ALJ err by rejecting the lay witness evidence from plaintiff's mother; and (3) Did the ALJ err in assessing plaintiff's RFC (*see* Dkt. 14, p. 1).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

DISCUSSION

(1) **Did the ALJ err in assessing the medical evidence in the record?**

Plaintiff argues that the ALJ did not give specific and legitimate reasons supported by substantial evidence in the record for rejecting the limitations assessed by Dr. Haroian (*see* Opening Brief, Dkt. 14, pp. 9-12).

Dr. Haroian performed a Psychological/Psychiatric Evaluation, including a Mental Status Examination ("MSE"), on March 12, 2012 (*see* AR. 258-67). Dr. Haroian assessed plaintiff as markedly or severely limited in his ability to adapt to changes in a routine work setting, make simple work-related decisions, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting with limited public contact, maintain appropriate behavior in a work setting, and complete a

normal workday and workweek without interruptions from psychologically-based

symptoms (AR. 260).

The ALJ must provide "clear and convincing" reasons for rejecting the

uncontradicted opinion of either a treating or examining physician or psychologist.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d

418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when

a treating or examining physician's opinion is contradicted, that opinion can be rejected

"for specific and legitimate reasons that are supported by substantial evidence in the

record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043

(9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can

accomplish this by "setting out a detailed and thorough summary of the facts and

conflicting clinical evidence, stating his interpretation thereof, and making findings."

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881

F.2d 747, 751 (9th Cir. 1989)).

Here, the ALJ gave Dr. Haroian's opinion no weight, explaining:

> I accord no weight to this psychologist's opinion as it relies largely on the
> claimant's self-report of anger problems, which is not found to be credible
> as discussed above. Additionally, the degrees of severity implicated on the
> evaluation form are inconsistent with the psychologist's contemporaneous
> mental status exam. For example, as discussed above, the claimant was able
> to engage appropriately. While stream of mental activity was noted to be
> slow and deliberate, it was for the most part, "well organized." The
> claimant had no difficulty following a 3-step command or following
> conversation (Exhibit 4F.5).

(AR. 20). Neither of these reasons is legitimate.

First, the Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

According to the Ninth Circuit, "[an] ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)

1  (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))). This situation is

2  distinguishable from one in which the doctor provides his own observations in support of

3  his assessments and opinions. *See Ryan v.Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194,

4  1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and convincing reasons for

5  rejecting an examining physician's opinion by questioning the credibility of the patient's

6  complaints where the doctor does not discredit those complaints and supports his ultimate

7  opinion with his own observations"); *see also Edlund v. Massanari*, 253 F.3d 1152, 1159

8  (9th Cir. 2001). Therefore, "when an opinion is not more heavily based on a patient's

9  self-reports than on clinical observations, there is no evidentiary basis for rejecting the

10  opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (*citing Ryan, supra*,

11  528 F.3d at 1199-1200).

12

13  Here, Dr. Haroian performed an MSE, charting a number of results (*see* AR. 262-

14  67). Dr. Haroian observed that plaintiff's mood was depressed and his affect flat, that he

15  displayed difficulties with attention and concentration, and that he had poor abstraction

16  skills (AR. 262). Dr. Haroian recorded that plaintiff could not complete Serial 7s and

17  failed a test of short-term recall (*id.*). Dr. Haroian also noted that plaintiff had "limited

18  insight regarding his current difficulties and demonstrated poor capacity to make good

19  decisions" (*id.*). Moreover, Dr. Haroian summarized the results of the MSE in a section

20  labeled, "OBJECTIVE DATA COLLECTED" (*see* AR. 261). Therefore, the record

21  shows that Dr. Haroian did not base an opinion of plaintiff's limitations largely on self-

22  reported symptoms. Rather, Dr. Haroian provided a medical source statement that was

23

24  based on medical records, the doctor's observations, the objective results of the MSE, and

ORDER ON PLAINTIFF'S COMPLAINT - 6

1  plaintiff's self-reported symptoms. Thus, the ALJ's finding that the doctor's assessment

2  was based largely on plaintiff's self-reported symptoms is not supported by substantial

3  evidence.

4  　　　Second, discrepancies between a medical opinion source's functional assessment

5  and that source's clinical notes, recorded observations and other comments regarding a

6  claimants capabilities "is a clear and convincing reason for not relying" on the

7  assessment. *Bayliss, supra*, 427 F.3d at 1216; *see also Weetman v. Sullivan*, 877 F.2d 20,

8  23 (9th Cir. 1989). In this case, the ALJ also gave no weight to the opinion of Dr.

9  Haroian because it was allegedly inconsistent with the doctor's own examination, citing

10  plaintiff's ability to engage appropriately, his well-organized stream of mental activity,

11  and his ability to follow a three-step command and follow conversation (AR. 20).

12  　　　However, that plaintiff could engage appropriately for the duration of the

13  interview does not necessarily indicate that he could maintain appropriate work behavior

14  during a full work schedule. That plaintiff's speech patterns and vocabulary usage and

15  recognition were described as "for the most part, well organized" (AR. 262) does not

16  contradict any of the marked or severe limitations assessed by Dr. Haroian. That plaintiff

17  could follow a three-step command and follow conversation does not undermine Dr.

18  Haroian's ultimate opinion that plaintiff has limitations performing routine tasks and

19  communicating effectively based on other observations of plaintiff failing at tasks and

20  then abandoning them (*see id.*). These alleged discrepancies between Dr. Haroian's

21  medical opinion and his exam findings are not true inconsistencies. The ALJ's finding of

an internal inconsistency is not supported by substantial evidence for wholly rejecting the opinion of Dr. Haroian.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). Here, because the ALJ improperly rejected the opinion of Dr. Haroian in forming the RFC and plaintiff was found to be capable of performing work based on that RFC, the error affected the ultimate disability determination and is not harmless.

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," and that "remand for an immediate award of benefits is appropriate." *Id.*  Here, the outstanding issue is whether or not a vocational

expert may still find an ability to perform other jobs existing in significant numbers in the national economy despite additional limitations. Accordingly, remand for further consideration is warranted in this matter.

CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

**JUDGMENT** is for plaintiff and the case should be closed.

Dated this 15th day of June, 2015.

J. Richard Creatura
United States Magistrate Judge